IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:25-CV-00036-KDB

| | |
|---|---|
| MELVIN SELLARS,<br><br>**Plaintiff,**<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>**Defendant.** | **MEMORANDUM AND ORDER** |

**THIS MATTER** is before the Court on Plaintiff Melvin Sellars's appeal of an unfavorable administrative decision denying his application for Social Security Disability Insurance Benefits under the Social Security Act. (Doc. No. 5). Having reviewed and considered the parties' briefs, the administrative record, and the applicable authority, the Court finds the Defendant Commissioner's decision to deny Plaintiff Social Security benefits is supported by substantial evidence and uses the correct legal standards. Accordingly, the Commissioner's decision will be **AFFIRMED**.

## I. BACKGROUND

Plaintiff Melvin Sellars ("Plaintiff"), through counsel, seeks judicial review of an unfavorable administrative decision on an application for disability benefits. (Doc. No. 1). Plaintiff filed an application for a period of disability and disability insurance benefits ("DIB") on or about November 8, 2021, under Title II of the Social Security Act, 42 U.S.C. § 405, alleging an inability to work due to a disabling condition beginning January 1, 2021. (Transcript of the Record of Proceedings ("Tr.") 142). The Commissioner of Social Security (the "Commissioner" or

1

"Defendant") denied Plaintiff's application initially on June 24, 2022, and again after reconsideration on January 18, 2023. (Tr. 69–70, 77–78). In its "Personalized Disability Explanation," the Social Security Administration ("SSA") included the following explanation of its decision:

> Your condition results in some limitations in your ability to perform work related activities. However, these limitations do not prevent you from performing work you have done in the past as a/an Claims Adjuster, as you described. We have determined that your condition is not severe enough to keep you from working. We considered the medical and other information and work experience in determining how your condition affects your ability to work.

(Tr. 89).

Plaintiff filed a timely written request for a hearing on February 1, 2023. (Tr. 91–93). On August 10, 2023, Plaintiff appeared and testified at a telephone hearing before Administrative Law Judge Susan Poulos (the "ALJ"). (Tr. 32–63). In addition, Andrea Thomas, a vocational expert ("VE"), and Melissa Wilson, Plaintiff's attorney, appeared at the hearing. Id.

The ALJ issued an unfavorable decision on November 9, 2023, denying Plaintiff's claim. (Tr. 17–27). On December 15, 2023, Plaintiff filed a request for review of the ALJ's decision, which was denied by the Appeals Council on November 22, 2024. (Tr. 1–13). The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's review request. (Tr. 1).

Plaintiff's "Complaint" seeking review of the ALJ's determination was filed in this Court on January 17, 2025. (Doc. No. 1). "Plaintiff's Social Security Brief" (Doc. No. 5) was filed on May 16, 2025; the "Commissioner's Brief" (Doc. No. 8) was filed on July 14, 2025; and "Plaintiff's Social Security Reply Brief" (Doc. No. 9) was filed on July 24, 2025. This matter is now ripe for review and disposition.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner applied the correct legal standards. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

The Fourth Circuit has made clear that it is not for a reviewing court to re-weigh the evidence or to substitute its judgment for that of the Commissioner – so long as that decision is supported by substantial evidence. *Hays*, 907 F.2d at 1456 (4th Cir. 1990); *see also*, *Smith v. Schweiker,* 795 F.2d 343, 345 (4th Cir. 1986); *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). "Substantial evidence has been defined as 'more than a scintilla and [it] must do more than create a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Smith v. Heckler*, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting *Perales*, 402 U.S. at 401).

Ultimately, it is the duty of the Commissioner, not the courts, to make findings of fact and to resolve conflicts in the evidence. *Hays*, 907 F.2d at 1456; *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979) ("This court does not find facts or try the case de novo when reviewing disability determinations."); *Seacrist v. Weinberger*, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion."). Indeed, so long as the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court disagrees with the final outcome. *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982).

## III. DISCUSSION

The question before the ALJ was whether Plaintiff was under a "disability" as that term of art is defined for Social Security purposes, at any time between January 1, 2021, and November 9, 2023, the date of the ALJ decision.[1] To establish entitlement to benefits, Plaintiff has the burden of proving disability within the meaning of the Social Security Act. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

The Social Security Administration has established a five-step sequential evaluation process for determining if a person is disabled. 20 C.F.R. § 404.1520(a). The five steps are:

(1) whether claimant is engaged in substantial gainful activity - if yes, not disabled;

(2) whether claimant has a severe medically determinable physical or mental impairment, or combination of impairments that meet the duration requirement in § 404.1509 - if no, not disabled;

(3) whether claimant has an impairment or combination of impairments that meets or medically equals one of the listings in appendix 1, and meets the duration requirement - if yes, disabled;

(4) whether claimant has the residual functional capacity ("RFC") to perform her/his past relevant work - if yes, not disabled; and

(5) whether considering claimant's RFC, age, education, and work experience he/she can make an adjustment to other work - if yes, not disabled.

20 C.F.R. § 404.1520(a)(4)(i-v).

---

[1] Under the Social Security Act, 42 U.S.C. § 301, the term "disability" is defined as an: inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

The burden of production and proof rests with the claimant during the first four steps; if claimant is able to carry this burden, then the burden shifts to the Commissioner at the fifth step to show that work the claimant could perform is available in the national economy. *Pass*, 65 F.3d at 1203. In this case, the ALJ determined at the fourth step that Plaintiff was not disabled. (Tr. 25).

First, the ALJ determined that Plaintiff had not engaged in any substantial gainful activity since January 1, 2021, the alleged disability onset date. (Tr. 19). At the second step, the ALJ found that degenerative joint disease of the knees, chronic obstructive pulmonary disease, and obesity were severe impairments.[2] (Tr. 20). At the third step, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. 404, Subpart P, Appendix 1. (Tr. 21).

Next, the ALJ assessed Plaintiff's RFC and found that he retained the capacity to perform light work activity, with the following limitations:

> [Plaintiff] can: perform frequent balancing; perform occasional kneeling, crouching, crawling, and climbing of ramps or stairs; and should never climb ladders, ropes, or scaffolds. [Plaintiff] should avoid concentrated exposure to excessive humidity and pulmonary irritants, such as dusts, fumes, odors, and gases. [Plaintiff] should also avoid concentrated exposure to workplace hazards such as unprotected heights and dangerous moving machinery.

(Tr. 22). In making this finding, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p." (Id.)

At the fourth step, the ALJ held that Plaintiff could perform his past relevant work as a Collection Clerk, Benefits Clerk, or Claims Clerk. (Tr. 25). Each of these jobs were described as

---

[2] The determination at the second step as to whether an impairment is "severe" under the regulations is a *de minimis* test, intended to weed out clearly unmeritorious claims at an early stage. See Bowen, 482 U.S. at 153.

5

involving "**sedentary exertion**." (Id.) (emphasis added). Therefore, the ALJ concluded that Plaintiff was not under a "disability," as defined by the Social Security Act, at any time between January 1, 2021, and the date of her decision, November 9, 2023. (Tr. 27).

On appeal to this Court, Plaintiff identifies only one error: the "ALJ's RFC is contrary to law because it does not account for the 'total limiting effects' of Plaintiff's severe impairments, in particular his significant standing/walking limitations." (Doc. No. 5, pp. 1, 6). However, in reviewing Plaintiff's argument, he includes, somewhat confusingly, several issues under this one heading. The undersigned understands there to be three assignments of error: 1) the RFC does not account for the total limiting effects of Plaintiff's severe impairments, specifically standing/walking; 2) the ALJ does not give appropriate weight to the State Agency consultative exams and the ALJ did not sufficiently address the supportability of the State Agency opinions; and 3) the ALJ discounted Plaintiff's subjective statements and failed to consider the record as a whole. The Court will discuss each of these arguments in turn.[3]

**A. The RFC sufficiently accounts for Plaintiff's severe impairments.**

First, Plaintiff argues the RFC does not account for all of the practical effects of Plaintiff's impairments with respect to standing and walking. (Doc. No. 5, pp. 6–15). Essentially, Plaintiff argues the RFC does not account for the State Agency examiners' opinions with respect to standing and walking. (Id.) Plaintiff claims the ALJ "concluded to the extent [Advanced Practice Registered Nurse ("APRN")] Wood's opinion could be construed as describing greater limitations than are set forth in the RFC, the opinion is inconsistent with the record that reflects frequent observations

---

[3] The undersigned notes the Commissioner "addresses only the issues raised by Plaintiff in his brief." (Doc. No. 8, p. 2). The Commissioner contends "[a]ny other potential issues have been forfeited." (Id.) The Court finds that although Plaintiff represented that there was one assignment of error, "Plaintiff's Social Security Brief" (Doc. No. 5) lumps multiple arguments under one heading. Therefore, the Court addresses all of Plaintiff's assignments of error.

of normal gait, strength, and range of motion." (*Id.* at 10). Plaintiff claims "the ALJ simply did not explain how APRN Wood and Dr. Bolz'[s] exam findings were explained/ accounted for in the RFC, based on his false premise that the record was more or less one-sided in terms of exam findings." (*Id.* at 13). Plaintiff also argues:

> [S]eparately and together APRN Wood and Dr. Bolz describe a host of findings that facially support their conclusions and, perhaps more to the point, directly contradict the ALJ's claim that the record generally only includes minimal exam findings. Very notably in this respect, the ALJ's RFC finding did not resolve this basic fact; rather, the ALJ (not even entirely accurately) summarizes the record and then states that the evidence supports his RFC finding, *never explaining how this is the case*.

(*Id.* at 12) (emphasis in original). Notably, Plaintiff writes that he "acknowledges that the State Agency administrative findings generally support the ALJ's RFC . . . ." (*Id.* at 15).

In response, Defendant argues the ALJ did properly account for and explain Plaintiff's limitations related to standing and walking. (Doc. No. 8, pp. 7–10). Defendant contends the ALJ "was required to thoroughly review the record evidence, which he did in a detailed, single-spaced, 10-page decision" and "the evidence fails to support the level of limitation with sitting that Plaintiff now alleges." (*Id.* at 7). Defendant claims "the ALJ explained the basis for the RFC and included limitations in the RFC that were supported by the evidence presented," and "the ALJ fully accounted for Plaintiff's physical impairments by restricting him to light work with occasional kneeling, crouching, crawling, and climbing of stairs, but never climbing ladders, ropes, or scaffolds." (*Id.* at 8). Defendant claims "the ALJ here explained how the RFC finding accommodated Plaintiff's standing and walking limitations[ and b]ecause the ALJ conducted the appropriate legal analysis in reaching findings that are supported by substantial evidence, the decision should be affirmed." (*Id.* at 9). In sum, Defendant argues "[w]hile Plaintiff disagrees with

7

Case 3:25-cv-00036-KDB    Document 10    Filed 03/05/26    Page 7 of 16

the ALJ's findings, he fails to show that the ALJ's decision was not supported by substantial evidence in the record as a whole[.]" (*Id.*)

The Court agrees with Defendant. "In crafting an RFC, an ALJ must 'build an accurate and logical bridge from the evidence to his conclusion.'" *McBride v. Kijakazi*, No. 1:20-CV-328-GCM, 2021 WL 6064840, at *3 (W.D.N.C. Dec. 22, 2021) (citing *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016)). "The Court must determine whether substantial evidence supported the ALJ's findings, *not* whether other record evidence weighed against the finding." *Delano v. Bisignano*, No. 3:25-CV-026-KDB, 2025 WL 2463623, at *4 (W.D.N.C. Aug. 18, 2025). Additionally, courts cannot re-weigh the evidence or substitute its judgment for the Commissioner when the Commissioner's decision is supported by substantial evidence. *Hays*, 907 F.2d at 1456. "'The fact that [the plaintiff] disagrees with the ALJ's decision, or that there is other evidence in the record that weighs against the ALJ's decision, does not mean that the decision is unsupported by substantial evidence.'" *Delano*, No. 3:25-CV-026-KDB, 2025 WL 2463623, at *4 (citing *Lanier v. Colvin*, 2015 WL 3622619, at *1 (S.D. Ga. June 9, 2015)). "In reviewing for substantial evidence, [courts] do not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [ALJ]." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).

Here, the ALJ accounted for Plaintiff's limitations related to standing and walking in the RFC. (Tr. 22–25). The ALJ limited Plaintiff to light work, occasionally kneeling, crouching, crawling, and climbing of ramps or stairs, and never climbing ladders, ropes, or scaffolds. (Tr. 22). The ALJ also sufficiently addressed APRN Wood's and Dr. Bolz's opinion regarding Plaintiff's limitations with standing and walking. (Tr. 22–26). The ALJ noted that during the examination with APRN Wood, Plaintiff "displayed good hand-eye coordination and normal strength[,]" "was

able to lift light objects[,]" and "did not require an assistive device." (Tr. 24). The ALJ further noted that during the examination with Dr. Bolz, Plaintiff "did not use a handheld assistive device[,]" although he had "slightly reduced grip, quad, and hamstring strength, [he had] normal strength[,]" and he had "an antalgic gait and absent reflexes, but good balance." (Tr. 24).

The ALJ also observed that Plaintiff had "indicated he was exercising seven days per week during his January 2021 physical" and had "discussed exercising with a Bowflex and achieving targets of 8,000 to 10,000 steps with a Fitbit." (Tr. 24). Moreover, around this time Plaintiff "was noted to have normal strength and range of motion." (Id.).

The Court finds the ALJ sufficiently built an accurate and logical bridge from the evidence to her conclusion regarding Plaintiff's limitations related to standing and walking. The Court will respectfully decline Plaintiff's invitation to "reweigh the evidence." *Hancock*, 667 F.3d at 472. "Merely disagreeing with the ALJ's determination, when the ALJ properly considered the evidence of record, does not provide a basis for remand." *Mundy v. Comm'r of Soc. Sec. Admin.*, 2021 WL 9594481, at *11 (D.S.C. Dec. 17, 2021).

**B. The ALJ sufficiently considered the State Agency consultative examinations.**

Next, Plaintiff argues the ALJ did not consider the supportability and consistency of APRN Wood's, Dr. Bolz's, and Dr. Mensah's consultative examinations. (Doc. No. 5, pp. 11, 14–15). Plaintiff contends "his assignment of error is that the ALJ did not reasonably find the opinions of APRN Wood and Dr. Bolz *un*persuasive[ and] the second step analysis required under § 404.1520c(b)-(c) that was never performed by the ALJ cannot, of course, be performed by this Court on appeal." (*Id.* at 15–16) (emphasis in original). Plaintiff alleges the ALJ did not compare Dr. Bolz's "exam findings of 'very slow' antalgic gait, observations of slow arising from a seated position, mounting the exam table slowly, absent deep tendon reflexes, diminished muscle

9

strength, and that the testing itself caused pain . . . to his conclusions of significant standing/walking limitations – and the same regarding APRN Wood's assessment." (*Id.* at 15). Plaintiff argues "the ALJ plainly did not perform the required 'supportability' analysis required by 404.1520c(a) regarding APRN Wood and Dr. Bolz'[s] opinions," and so remand is appropriate. (*Id.*) Plaintiff also posits the "ALJ did not make a persuasiveness finding regarding Dr. Mensah's pulmonary assessment but concluded when assessing this evidence that the 'claimant's impairments are not as limiting as alleged.'" (*Id.* at 11).

Defendant did not address this argument.

The Court notes that under the new regulations, the ALJ will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . ." 20 C.F.R. § 404.1520c(a). "Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions . . . ." *Rediford B. v. Kijakazi*, 2023 WL 9550461, at *6 (E.D. Va. Nov. 9, 2023). When evaluating the persuasiveness of medical opinions, the "most important factors" are supportability and consistency. 20 C.F.R. § 404.1520c(a). Courts "review the subsidiary determination that a medical opinion has or lacks supportability and consistency for substantial evidence." *Drumgold v. Comm'r of Soc. Sec.*, 144 F.4th 596, 606 (4th Cir. 2025). "[T]he ALJ need not necessarily use the words 'supportability' or 'consistency,' as long as the ALJ still performs the requisite analysis of these factors." *Todd A. v. Kijakazi*, 2021 WL 5348668, at *4 (E.D.Va. Nov. 16, 2021). Furthermore, "there is no requirement that an ALJ use any 'magic words' in making findings regarding consistency and supportability." *Tyrun W. v. O'Malley*, 2024 WL 4349241, at *5 (M.D.N.C. Sept. 30, 2024).

"Supportability is an internal check that references objective medical evidence and supporting explanations that come from the source itself." *Croft v. Kijakazi*, No. 3:22-CV-653-

MOC, 2023 WL 4241678, at *5 (W.D.N.C. June 28, 2023). When an ALJ failed to "examine the extent to which [a doctor's] own treatment notes supported his opinions[,]" the ALJ did not sufficiently address the supportability factor. *Rosa M. v. Kijakazi*, 2023 WL 9101308, at *7 (D.S.C. Dec. 8, 2023). In *Rosa M.,* "the ALJ merely stated [the doctor's] opinion was 'unsupported' by evidence in the record and proceeded to list evidence mostly attributed to other doctors' treatment notes – treatment notes which are *irrelevant* to whether [the doctor's] opinions are supported by his *own* treatment notes and explanations." *Id.* (emphasis in original).

"Consistency is an external check that references evidence from other medical and nonmedical sources. *Croft*, No. 3:22-CV-653-MOC, 2023 WL 4241678, at *5. When an ALJ compared a doctor's "restrictive limitations to other evidence in the record and explained why they did not align[,]" the ALJ "sufficiently explained how this component of the opinion was inconsistent with the broader medical record, as required by 20 C.F.R. § 404.1520c(c)(2)." *Joyce C. v. Bisignano,* 2026 WL 458564, at *4 (D. Md. Feb. 18, 2026). Also, when an ALJ explained a doctor's opinions were inconsistent with other physical evaluations from other doctors, the ALJ sufficiently considered the consistency factor. *See Caldwell v. Comm'r of Soc. Sec.*, No. 5:21-CV-094-RJC, 2022 WL 3974269, at *4 (W.D.N.C. Aug. 31, 2022).

"However, not all medical evidence falls within the scope of medical opinion." *Karla J. v. Kijakazi*, 2023 WL 2663255, at *2 (W.D. Va. Mar. 28, 2023). "A 'medical opinion' makes findings as to 'whether [a claimant has] one or more impairment-related limitations or restrictions' in a listed area of ability." <u>Id.</u> (citing 20 C.F.R. § 404.1513(a)(2)). A consultative examination report may provide a medical opinion, but not all do. *Karla J. v. Kijakazi*, 2023 WL 2981513, at *10 (S.D.W. Va. Jan. 30, 2023), *report and recommendation adopted*, 2023 WL 2663255 (S.D.W. Va. Mar. 28, 2023); *see* 20 C.F.R. § 404.1519n(c)(6) ("Although [the SSA] will ordinarily request a

medical opinion as part of the consultative examination process, the absence of a medical opinion in a consultative examination report will not make the report incomplete.").

Whether a consultative examination provides a medical opinion determines whether an ALJ must consider its persuasiveness. When a doctor offers "no opinions or conclusions regarding [a plaintiff's] ability to perform the mental or physical demands of work activities, [the plaintiff's] ability to perform other demands of work, or [the plaintiff's] ability to adapt to environmental conditions," then an ALJ does not have to address the supportability and consistency of that report. *Karla J.*, 2023 WL 2981513, at *10, *report and recommendation adopted*, 2023 WL 2663255. On the other hand, when a consultative examiner's report makes findings about a plaintiff and opines the plaintiff has limitations, for example moderate limitations sitting, standing, walking, climbing stairs, bending, and lifting, then that is a medical opinion requiring an ALJ to address its supportability and consistency. *Ayala v. Kijakazi,* 620 F. Supp. 3d 6, 8–9, 16 (S.D.N.Y. 2022).

The Court finds Plaintiff's argument to be without merit. The ALJ sufficiently considered APRN Wood's, Dr. Bolz's, and Dr. Mensah's consultative examinations. The Court will address APRN Wood and Dr. Bolz first, and then Dr. Mensah.

**1. The ALJ sufficiently considered the persuasiveness of APRN Wood's and Dr. Bolz's consultative examination reports and opinions.**

In considering APRN Wood's consultative examination and assessment, the ALJ noted "the identified restriction to reaching, pushing, and pulling appears internally inconsistent with Ms. Wood's observations of normal strength and coordination." (Tr. 25–26). The ALJ also explained APRN Wood's "opinion is inconsistent with the evidence as a whole, which reflects frequent observations of normal gait, strength, and range of motion." (Tr. 25). The ALJ sufficiently addressed the supportability factor because she examined the extent to which APRN Wood's notes and observations did not support her opinion. (Tr. 25–26). The ALJ sufficiently addressed the

12

consistency factor because she explained why she found APRN Wood's opinion inconsistent with the record as a whole. (Tr. 25).

In addressing Dr. Bolz's consultative examination and assessment, the ALJ wrote "Dr. Bolz's analysis is poorly supported as he did not identify a medically determinable impairment" and "the general notion of some physical limitations does draw some support from the observations of antalgic gait and reduced strength." (Tr. 25). The ALJ further discussed Dr. Bolz's opinion and said "the magnitude of the limitations assessed are inconsistent with the claimant's treatment records, which reflect repeated observations of normal gait, strength, and range of motion. (Tr. 25). The ALJ sufficiently addressed the supportability factor because she compared his observations with his opinion. (Tr. 25). The ALJ also sufficiently addressed the consistency factor because she examined the extent to which Dr. Bolz's opinion is inconsistent with the record. (Tr. 25).

Although the Court notes the ALJ did not provide the lengthiest analysis, the ALJ sufficiently considered the supportability and consistency factors. The ALJ discussed how she determined APRN Wood's and Dr. Bolz's observations did not support their assessments. (Tr. 25). The ALJ also discussed how she found APRN Wood's and Dr. Bolz's opinions to be inconsistent with the medical record. (Tr. 25). The Court finds that the ALJ's decision with respect to the persuasiveness of APRN Wood's and Dr. Bolz's opinions to be supported by substantial evidence, and therefore this argument is not a basis for remand.

**2. The ALJ did not need to consider the persuasiveness of Dr. Mensah's consultative examination report because it is not an opinion.**

On January 7, 2023, Dr. Mensah performed a consultative examination and reported the following about Plaintiff's pulmonary function:

> FEV1 is 44% of predicted; FEV1/FVC is 77% of predicted; FVC
> is 60% of predicted. There is reversibility post bronchodilator.
> Interpretation: 1. Severe mixed pattern. 2. Pure obstruction with
> air trapping, likely chronic obstructive lung disease.

(Tr. 392). In her decision, the ALJ notes Dr. Mensah "was reviewing pulmonary function testing from 2014, well prior to the relevant period." (Tr. 24). The ALJ writes "[t]he application of these remote findings is dubious, particularly when considering the claimant['s] recent pulmonary function testing." (Tr. 24). The Court finds while Dr. Mensah performed a consultative examination, Dr. Mensah did not provide a medical opinion. Dr. Mensah provides no conclusion about Plaintiff's ability to perform the mental or physical demands of work activities. Since Dr. Mensah does not make findings about Plaintiff and does not provide an opinion about Plaintiff and any limitations he may have, this is not a medical opinion. *Karla J.*, 2023 WL 2981513, at *10, *report and recommendation adopted*, 2023 WL 2663255; *Ayala*, 620 F. Supp. 3d at 8–9, 16. Therefore, the ALJ was not required to consider the supportability and consistency here, and Plaintiff's argument is without merit.

**C. The ALJ sufficiently considered Plaintiff's subjective statements and considered the record as a whole.**

The Court will address Plaintiff's final argument, which seemingly alleges the ALJ failed to consider Plaintiff's subjective statements, contrary to *Arakas v. Comm'r, Soc. Sec. Admin.,* 983 F.3d 83 (4th Cir. 2020) and *Shelley C. v. Comm'r of Soc. Sec. Admin.*, 61 F.4th 341 (4th Cir. 2023). (Doc. No. 5, pp. 8–11, 16–17). Plaintiff argues the ALJ had "to discuss *not only objective evidence*, but the listed 'other factor's' since objective evidence alone does not always fully explain a claimant's symptoms and limitations." (*Id.* at 11) (emphasis in original). Plaintiff claims the ALJ found "'the claimant's statements . . . are not entirely consistent [with the evidence], for the reasons explained in this decision,'" and then "the ALJ never again returned to the required analysis or, at

least, not the *complete* analysis that must include discussion of the 404.1529 factors." (*Id.* at 16–17) (emphasis in original). Additionally, Plaintiff contends the ALJ was required by 20 C.F.R. § 404.1529 to consider the record as a whole. (Id. at 16–17).

Defendant did not address these arguments.

To start, the Court finds the cases Plaintiff cites do not apply here. The Fourth Circuit held that when diseases do not produce objective medical evidence the lack thereof may not be used to discredit a plaintiff's subjective statements of the disease. *Arakas*, 983 F.3d at 97. The Fourth Circuit has specifically considered this in the context of fibromyalgia, *id.* at 97–98, and depression, *Shelley C.*, 61 F.4th at 367–68. Those cases are not applicable here. While Plaintiff highlights his pain, (Doc. No. 5, pp. 1–3, 12, 15), Plaintiff's impairments do produce objective medical evidence, with the ALJ considering Plaintiff's knee surgery, postsurgical changes, degenerative issues, and gout. (Tr. 20, 23). Furthermore, even though the argument under *Arakas* and *Shelley C.* does not apply, the Court finds the ALJ did sufficiently consider the factors listed in 20 C.F.R. § 404.1529. For example, the factors listed in 20 C.F.R. § 404.1529(c)(3) also include a plaintiff's daily activities. The ALJ did consider Plaintiff's daily activities, including that Plaintiff indicated he was able to drive, that he exercised with a Bowflex, and that he achieved targets of 8,000 to 10,000 steps with a Fitbit. (Tr. 23–24). Again, "'[t]he fact that [the plaintiff] disagrees with the ALJ's decision, or that there is other evidence in the record that weighs against the ALJ's decision, does not mean that the decision is unsupported by substantial evidence.'" *Delano*, No. 3:25-CV-026-KDB, 2025 WL 2463623, at *4 (citing *Lanier*, 2015 WL 3622619, at *1).

Additionally, the ALJ did consider the record as a whole. Courts "must read the ALJ's decision as a whole." *Keene v. Berryhill*, 732 F. App'x 174, 177 (4th Cir. 2018) (per curiam). ALJs are not required to refer specifically "to every piece of evidence in his decision." *Reid v. Comm'r*

*of Soc. Sec.,* 769 F.3d 861, 865 (4th Cir. 2014). "An ALJ has an obligation to consider all relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding." *Lewis v. Berryhill*, 858 F.3d 858, 869 (4th Cir. 2017) (citing *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010)). Contrary to Plaintiff's argument, the ALJ considered the record as a whole and substantial evidence supports her decision. The ALJ sufficiently discussed the record and built an accurate and logical bridge to her conclusion. (Tr. 22–26). Once again, "[m]erely disagreeing with the ALJ's determination, when the ALJ properly considered the evidence of record, does not provide a basis for remand." *Mundy*, 2021 WL 9594481, at *11.

## IV. ORDER

**NOW THEREFORE IT IS ORDERED THAT** Plaintiff's appeal (Doc. No. 5) is **DENIED** and the Commissioner's decision is **AFFIRMED**.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: March 5, 2026

Kenneth D. Bell
United States District Judge